Good morning, this is OKO v. IL Dept. of Revenue. For the appellant, Mr. Tye. For the appellate, Mr. Truitt. You may proceed. Is that the correct pronunciation? Yes, sir. Thank you.  My name is Tim Tye. I'm here for the appellant OKO, LLC. I'd like to start with what I think is probably the least important aspect of this case, but I also think it's unfortunately a potential distraction. So I'd like to clear that up first. That is the issue with the amendments to the lease and whether or not they relate back. It is my client's position that this sale-leaseback, as it was originally executed, fully preserved all the indicia of ownership with the non-profit entity such that the tax exemption was not lost. We did not make these amendments because we thought we needed to fix it to get anywhere. They were made because during the course of settlement discussions with the department, it was more or less suggested that if some changes were made, maybe we could settle the case. It didn't get settled. I'm not trying to bring settlement talks into evidence. I'm just saying that we didn't change it because we thought we needed to. Also, the reason we were willing to make these changes is because it really didn't change anything for us. It just reflected what had always been in practice and intent of the agreement anyway. So we didn't have a problem making these changes. The reason I make that point is because if the court does find that there was something lacking in the original lease, the amendments, we believe, do relate back because, one, leases can relate back. We've quoted case law that says that. Second, it does reflect the original intent of the parties. I'm hoping the court can simply find that the original lease complied, the indicia of ownership was preserved, don't really need to look at the 08 lease, and can say that the 08 lease is even better with the amendment, so it complies too. Getting to the merits of the case. The sole legal issue is whether or not the sale leased back so divested Old King's Orchard Community Center of its indicia of ownership that the property should lose its tax exempt status. The standard of review on that question is clearly erroneous. And a decision is clearly erroneous when there is evidence supporting reversal and the reviewing court is left with the definite and firm conviction that a mistake has been committed. The department found that this sale lease back had in fact divested Old King's Orchard Community Center of its indicia of ownership. And its reasoning was quoted on page 10 of my brief, and it's down at the bottom there. Basically it says, Mr. Koa's good intentions have nevertheless divested the center of ownership for property tax purposes. Because if Mr. Koa is responsible for the rent, insurance, maintenance, and property taxes, then he is responsible for the things that are generally associated with ownership. Well, let's look at those each one by one. Paying rent is not an indicia of ownership. It's just not. And insurance and maintenance, Mr. Koa is in fact not responsible for that. Under the lease, the community center is responsible for maintenance and insurance. Now, it does so happen that Houston Patterson Corporation, which is a company owned by Tom Koa, is generously and gratuitously paying those for the center right now, but it doesn't have any obligation to. The obligation to pay those things is on the community center. And then finally, property taxes. Well, according to this court's decision in Coles-Cumberland Professional Development Corporation, making the tenant pay taxes is bad. Now, I'll read what the court said. Coles-Cumberland, which was the non-exempt lessor, has rented the property to Lincoln Land for $45,000 plus payments, including payment of real estate taxes. The payment of the real estate taxes are part of the rent, and it clearly benefits Coles-Cumberland not to have to pay those expenses. So this court said that making the exempt lessee pay the real estate taxes is a bad thing, and one of the reasons why you should deny exemption. So on the four things pointed out by the department, paying rent, insurance, maintenance, property taxes, all those things are completely wrong on the law and the facts. So I would submit that that's a clearly erroneous decision. Let me ask you this. Why is OKO taking this appeal? Why isn't the center taking the appeal? Well, Your Honor, because OKO owns the parcel. It is the legal title holder to the parcel. Obviously, we're arguing Holder King's Orchard is the equitable title holder. Also, because when we drafted this arrangement, we did the research, and when we read Coles-Cumberland, which is this court's decision that says it's a bad thing to make the lessee pay the real estate taxes, we put it in the lease that the lessor, which is OKO, would be responsible. Well, actually, you put it in that the lessee would have to pay rent if there were taxes due, right? Yes. So actually, isn't the lessee paying the taxes? The center has to pay $1,000 a month if it stops acting as a... It would have to pay that as rent. However, the lease has a specific provision for the real estate taxes. And unless I've been wrong for a long time, I'm pretty sure the lease says that the lessor is responsible for the property taxes. That's right. And the lessor is not an exempt entity. That's correct. So how do they claim an exemption? They're responsible for the payment of the real estate taxes, and they're not exempt. They're a non-exempt owner. Because this is a sale-leaseback arrangement used as an alternative financing, which under case law from this court says does not divest the lessee of the indicia of ownership. But in Cole Hospital, the lessee had the responsibility to pay the real estate taxes under the lease. That's correct. And the lessee was claiming the exemption, not the non-exempt owner. That is correct, but also in... Well, that's a big difference in what you're looking at. It is, but in Coles-Cumberland, making the lessee pay the taxes was one of the reasons why the court said you don't get the exemption. I'm not sure we said that, but I'll take a look at that case. Well, the question here really is, is the property tax exempt, right? That is my position. If somebody sends me a tax bill on your property, I get to go in and say, hey, this isn't mine, it's yours, right? Well, that's right. It's who owns the property for tax purposes, and it's our position that for tax purposes, Old King's Orchard Community Center owns the property. How do you say that? When OKO, under the lease, first of all, they own it outright. He didn't want to lend the money. Mr. Cole didn't. He wanted to own the property so he could keep control. Well, he wanted to preserve a security interest. He did the exact same thing that the lender did in Poole Hospital. Well, not exactly. Because he is responsible for the payment of the real estate taxes. OKO LLC is under the lease that we drafted. And they're not an exempt owner. And they're not an exempt owner. But they're claiming an exemption. They're claiming that for tax purposes it's actually owned by Old King's Orchard Community Center. Well, Old King's Orchard could claim that they're actually the owner of the property and then apply for an exemption. But that's not what happened in this case. Well... Because OKO is not responsible for paying the real estate taxes. Excuse me, the center is not responsible for paying the real estate taxes. If they were, and if they claimed we have an issue of ownership and we're applying for an exemption, you'd have an argument to make. Well, and I understand what you're getting at. The problem is that when you look at Coles-Cumberland, when the court went through all the factors that worked against finding that the issue of ownership remained with the lessee instead of the lessor, one of the things the court pointed out was that the lessor was making the lessee pay rent and pay the property taxes. And that was a bad thing because it showed the lessor was trying to make money off the property. And this lessor was not making any money off this property. How about Coles Hospital? Well, at Coles Hospital, they needed money and they found an alternative financing arrangement. They did their sale lease back. OK. And under the lease terms, who was responsible to pay the property taxes? Well, in that case, it was the lessee. And they were the charitable organization. That's right. And they applied for the exemption. Well, and then in a later case, this court said that making the lessee pay the property taxes is a bad thing. In that later case, who applied for the exemption? Well, it was Coles-Cumberland Professional Development Corporation, which was the owner, and the Lincoln Land Home Care Foundation Inc., which was the lessee. So it looks like in this one, they both did. I don't represent Old King's Orchard Community Center. I represent OKO LLC, which is being sent property tax bills. Because they're responsible to pay them. Well, unless the addition of ownership is really with Old King's Orchard Community Center, in which case the property is tax exempt under the case law. Has the Department of Revenue ever made this argument that the wrong person is filed for the exemption in this case? Not that I'm aware of, Your Honor. They haven't in their brief. That was made in the hearing below. I remember being at the oral arguments. I don't remember that being specifically said that way. I've read the record. It was. Well, if it was, I missed it. What benefit, if any, is there to OKO in this arrangement? The non-profit? No. What benefit is there to OKO? Oh, the for-profit. They get to do a good thing, from their perspective. I understand that. But is there an economic benefit to be derived other than the potential of a future economic benefit, because they have some control over what ultimately may happen to the asset? There is no financial benefit to OKO LLC or to Tomko or to Houston Patterson. What about the forgiveness of the rent? Well, that hurts OKO LLC because they're not going to pay anything. And they don't take a charitable contribution. No. OKO LLC is not a charitable entity. It's just a for-profit LLC that owns the real estate. Well, for-profits can take a charitable contribution. If a for-profit makes a charitable contribution. Oh, are you asking if they write that off on their… Well, that's an economic benefit. I'm asking that. OKO LLC has no revenue, though. It doesn't have any income to write off. OKO LLC is a holding company, basically, that has no revenue. But you agree they're a for-profit organization. They're not a 503C. No, no, they're not. Of course, under the law, they don't have to be, if the issue of ownership is really with the non-exemplary. Well, I'll just… How is this case different than Victory Christian Church? Your Honor, Victory Christian Church… That's where a for-profit corporation was renting to a church and claimed a tax exemption because it was rented to a tax-exempt organization. Well, there are a lot of cases that say leasing to a non-exempt lessee does not make it tax exempt. If you have a sale-leaseback arrangement that's part of an alternative financing arrangement, then you can preserve the indice of ownership with the non-exempt lessee, which is Cole Hospital. It's also Henderson, which is a third district case. Of course, Henderson pointed out the most important indice of ownership is having the controller dispose of the property, which is a right option to purchase, which Old King's Orchard has. So it has that indice of ownership as well. I mean, in short, we drafted this looking at this Court's guidance, saying how do we arrange this financing in such a way that we can preserve the indice of ownership with the community center. And we had a client who came to us and said they need money and I want to give it to them, but I don't want to just give them $100,000 because of their past history. I'm afraid they're going to get more liens on their property, which is what they did. They took out loans to pay their operating expenses, and they're not going to be able to pay their loans back, and then they're going to go out of business. How can I do this to prevent that? And we looked at Cole Hospital, and it was almost the exact same facts. You had a charitable entity that had financial troubles. The lender came in and said, I'll give you the money, but here's how we're going to do it. You give me ownership, I'll lease it back to you. That way, if you get in trouble again, we don't have to go through a mortgage. I already own it. Old Kings Orchard Community Center no longer has the threat of being foreclosed on. They've effectively been guaranteed 15 years of existence. And OKO, an entity that doesn't have any income so it can't write off the taxes, owns a property that's basically a gymnasium in inner city of Decatur that's burdened with a 15-year lease by a tenant who doesn't have to pay any rent. There's no value to that. This is just a purely charitable endeavor. So I see I still have some more time. So I'd just like to briefly anticipate the department's arguments. When I read the department's brief, they no longer say paying rent is an addition of ownership. I think that's right. If I get their argument right, I think they're conceding that the elements, the factors that were present in Cole Hospital are also present in this case. But they're saying that unless it's an alternative financing arrangement, it still doesn't count, even if it still has all those factors. And I guess my response to that is, well, what else is it then? Old Kings Orchard needed money. They couldn't get it the standard way. They found somebody who'd give it to them. And so they set it up in a sale-leaseback arrangement that had all the factors that this court has said support the preservation of ownership, and none of the factors that cut against it. Unless you've got other questions, that's really our case. Well, if we focus on the issue of ownership, there are multiple things that can show an issue of ownership. That is correct. Well, what if the balance is on the side of OKO? The balance being there's a greater indicia of ownership in who we're viewing as the owner. Well, then obviously we lose. So it's a balance, in a sense. If there are any indicia of ownership on your side, then the question is whether those counterbalance or are heavier than whatever indicia of ownership remain on the other side. I think that has to be right, Your Honor. And the reason I would say that is in Cole Hospital, the county pointed out several things that it thought showed that the less or was retaining control. And that had to do with things like Cole had to continue to use the property as a hospital. It had to keep in good repair. It couldn't make alterations, things like that. And this court said, well, in our opinion, those are aimed... Well, what the court said was those go to the use, not necessarily the ownership. But there's also the fact that Old King's Orchard, I'm sorry, OKO legally has the title. So obviously there's some indicia of ownership there. Well, and they pay the property tax. Yeah, so there's always going to be some indicia of ownership with the less or. And they pay for the maintenance and insurance. Well, they don't have to. But they do. Well, they don't actually. Houston Patterson Corporation does that. Right, but that's owned by Mr. Cole. It is. In other words, the center's not paying those things. It is not right now because it was lucky enough to find somebody who would gratuitously donate those. Believe me, we all recognize that's a good thing. OK. And I'm sure you do. Again, my light is on unless there's other questions. Thank you. We'll hear from you on rebuttal. May it please the Court, I'm Eric Truitt. I assist an attorney general and I represent the Department of Revenue. I wanted to start off with a question Justice Mack did ask about balancing. And I think that's the right way to look at this case. There's no doubt that the center has some indicia of ownership. But the balance of the indicia of ownership lies with OCO. If you look at the cases in which this court and other courts have found that a party that does not hold legal title is still the owner, it's usually because the overwhelming balance of the incidents of ownership are with the lessee or the party that does not hold legal title. Mr. Truitt, can you tell me is there a single case that has held a non-exempt owner can get an exemption? Is there a single case that allows a non-exempt owner to get a tax exemption? When they're claiming it, when the exempt entity itself is not claiming an exemption. I'm not aware of such a case. If you start with, for example, Christian Action Ministry, it was the church that was claiming the exemption. Cole Hospital, it was the hospital that was claiming the exemption. Even in the cases in which the entity lost, like Wheaton College, it was the exempt entity that was claiming the exemption. And I think your question goes to an important point here, is that no one told Mr. Kawa to set up OKO as a limited liability company with himself as a sole member. He could have achieved the same charitable aim by setting up an exempt entity to hold the property and keep it away from the center. And so the tax consequence in this case is coming from the decision to have a non-exempt entity hold the property. And the property tax code, if you look at those, Section 1565 is somewhat difficult to read. But if you look at the three lower Roman numerals, the code does set forth ways that you can preserve an existing exemption by having... Well, there are other ways to do it, too. Is it your argument here today that OKO should not have filed this appeal? That the center should have made the argument that it was tax exempt? That was not the basis of the department's decision below. And so the basis of the department's decision below was that OKO is the owner of the property for tax purposes. So that's the decision that I'm defending here today. Okay, so it's not your argument that the wrong party is making this argument? I do think that that... I would disagree with that, but that wasn't the basis of the department's decision. So my argument rests upon... But doesn't that kind of naturally flow if they found that OKO is the legal owner of the property? And they're a non-exempt entity. How can they claim an exemption? I do think that naturally flows. And again, if you look at the... If you look at the reasoning behind all of the cases in which they found an exemption, even though the exempt entity did not hold title, it was almost always because they were going to have to... It was a charitable organization that was applying for an exemption. They were going to have to pay the taxes if the exemption was not found. Here, OKO is going to have to pay the taxes. There's no burden on the charitable organization. The whole idea here is that there will be no taxes. The cases say that record title is not controlled. The key is control and benefits. And doesn't the center have complete control and all the benefits? What benefits does the center... or do the center... does the center not have? Justice Cook, I would agree that fair legal title is not enough to be the owner for tax purposes. But again, if you look at the cases, the context of that statement, it's usually involving something like a land trust where the trustee... So you're saying a sale and lease back is not good? No, I'm not saying that a sale and lease back is not good. What I'm saying is that legal title is the starting point. And then under Cole Hospital, you can analyze a particular agreement and see whether or not that individual sale and lease back agreement is an alternative financing device. So it's... but my broader point was simply that in... So control and the right to benefits, isn't that the key? Those are important. And if you look at... OCO does exercise substantial control over the property. How so? Well, for example, under the original lease, the center does not have the right to renew the lease. It's only a 15-year period. So after that point, OCO is... The center has the right to purchase the property. In the September 29, 2008 addendum, they have an exclusive right to purchase in the original version of the lease. It's simply a right of first refusal. And they have limited rights against the third party if a sale were to take place. So there's... OCO retains a substantial ability to alienate the property, both during the course of the original lease as well as once the single-term lease expires. If OCO wants to sell the property, they can do it? Well, again, the original version of the lease gives the center the right of first refusal. There was substantial testimony at the administrative hearing that that... the center was not going to be able to buy the property. So if OCO were to run into financial difficulty or were simply to change its mind about its relationship with the center, nothing would stop it from selling it to a third party. And that's, you know, alienation is one of the primary incidents of ownership. And under the addendum, could OCO force a sale and then if the center couldn't... it might have the right to purchase, but if it's unable to follow through on a purchase, what happens then? I believe that under the addendum it is an exclusive right to purchase. But that's effective for tax purposes in 2008. Well, but an exclusive right to purchase is meaningless unless the entity that has the exclusive right has the ability to do it. If they make a good faith effort to obtain financing and are totally unable to do it, to make the purchase, what happens? I must confess I'm not sure. I would think an exclusive right... I could speculate as to that, but I'm not sure about how that would be interpreted. But it does get to the point that the center is not like Coal Hospital or not like the Charitable Organization of Christian Action Ministry. This property is not going to be eventually purchased by the center. There was some aspirations... I'm looking at the ALJ's order, page 4. The lease contains the following provisions. Right of purchase. For only so long as the premises maintains its status as exempt from real estate taxes, the lessee will have the right to purchase the property that is subject to this lease at any time for the current fair market value. You told me there was no right to purchase. I said that they couldn't stop a sale to a third party. I mean, certainly... I didn't say that they didn't have the right to purchase. I said that the evidence at the hearing... You told me they had a right of first refusal, but they did not have a right to purchase. They did have a right to purchase. Yes, they did have a right to purchase.  What I said, the evidence at the hearing, was such that the center would not be in the financial position to realistically ever purchase the property. Again, the key is control and the right to benefits. It seems to me that the center has complete control over this property and it has the right to all benefits. I can't think of a single benefit the center does not have. Again, a lessee would usually have the right to all the benefits of the property. In that case, they're not that different from an ordinary lessee. Great. Sale and lease back is just fine. The question here is control. Again, in all of the cases in which this court and other courts have found an exemption, the indicia of ownership that the lessor has retained, in this case OKO, have been very limited. For example, in Cole Hospital, the only incidents of ownership that it retained were basically those that were equivalent to the rights that a conventional lender would have when you have a promissory note and a security agreement. It didn't retain any other interest that would make it the owner. Here, OKO does have substantial interest in the control of the property. As I indicated, they can sell the property with limited restriction. There's not a continuing right to renew the lease. It's just a one-term 15-year lease. Again, with the center being financially unable to purchase it, many of the so-called rights that it has in the agreement are not really going to be exercised. Isn't the key reason for this sale and lease back arrangement to prevent foreclosure on the property by other creditors? That may be, but again, Mr. Kawa is only loosely analogous to a commercial lender. Why do we care about that? The key is the control and benefits which exist in the center. It seems to me they have even more power over this property than did the lessee in Cole's Hospital. For example, the lessee in Cole Hospital had the absolute right to purchase at the 11th and 15th year of the agreement. They had the obligation to pay the real estate taxes, too. They applied for the exemption. That leads to a point of confusion about rent. I think the fact that the lease was triple net showed that in essence, the agreement was just that those were what, if you had purchased the property using a conventional mortgage, those are the types of obligations that you would incur as the borrower in a conventional mortgage. By analogy to Christian Action Ministry, they didn't want to penalize the charitable organization. In Christian Action Ministry, it was a contract for deed. Here it was a sale and lease back agreement. The idea was if we have something that is basically a conventionally financed transaction, they might not have been able to do it in the standard way, but that's the basic intent and purpose of the agreement. If you look at the agreement, that's the effect that all of these provisions have, then we're not going to treat them differently. Here, as Justice Polk has pointed out, the main difference is that OKO is paying the taxes, the exempt entity is not paying the taxes. The rationale behind Cole Hospital and behind Christian Action Ministry is that we don't want to penalize a charitable institution because they were unable to do a transaction using conventional financing. That rationale is not applicable here. In addition, as has been pointed out, OKO could have structured itself as an exempt entity. So what? You could have done a thousand things differently. So what? The question is whether these things work. And I have a lot of trouble distinguishing this case from Cole Hospital. Well, I can go through some of the factors of the agreement. The first, as I indicated, was that the lease was triple net, such that the charitable institution, the lessee, was obligated to pay the real estate taxes, insurance, and maintenance. Another factor was that... To me, that makes this a better case for the exemption than Cole Hospital. Again, the question is control and benefits. And the lessee had more benefits in this case than it did in Cole Hospital. That is true, but as Justice Neck pointed out, there's a balance of considerations. Anytime you have a test like this that's multi-factor, in which no individual factor is predominant, you have to weigh back and forth these factors. And I think the difficulty that we're having here in deciding how much weight to apply to one factor versus the other shows that the Department's decision was not clearly erroneous. It's something about which we could disagree with, but it's not obviously wrong because there's certainly enough incidents of ownership that OKO has, legal title, financial responsibility for the property, the ability to alienate the property, such that you can't say that the Department's decision that it's the owner... Who has that right? Again... The lessee, OKO? OKO does... Under the original version of the lease, OKO can sell the property to a third party. And again, the lease is only a 15-year term with no renewal provisions, so after 15 years, it has absolute right to alienate the property. But again, as I pointed out, the original lease gives the center the right to purchase the property. An absolute right. That is true, and that would be an incident of ownership that would factor in the favor of the center. But again, if you look at the cases in which they have found that legal title was not enough to be the owner for tax purposes, the person that held legal title really held nothing else. Here, the center admittedly holds some incidents of ownership, but OKO also holds several incidents. So that distinguishes these other cases, and it also shows that the Department's decision was not clearly erroneous, because there was a reasonable basis for the decision. You could disagree about the weight that particular factors were given, but it's not a decision that's so obviously wrong that it cannot be agreed with. The center has the exclusive right to purchase the premises at any time for the current fair market value. The center has the right to change or improve, possess, use, and enjoy the property. The only gripe, as I saw it from reading the brief, was that some of these rights, or the center's right to purchase the property, was conditioned on its tax status. Well, that's... The whole purpose of this is to keep this center going as a charitable institution. Well, that may have been one of the purposes that Mr. Kawa had. Again, we don't know why he decided to structure OKO in a way that gave him lesser claim to an exemption. This case would not be before us if OKO had been an exempt entity. It seems to me you keep saying, they could have done this, they could have done that. Now, as Mr. Tai says, isn't that the position you took during the negotiations here? And they would go and change the lease in response to every suggestion you made? And then you finally said, no, that's not good enough? Well, the discussion of what happened during the negotiations are not part of the record, so it's difficult to assess the validity of the department's decision on the basis of extra record assertions. In addition, whatever the department may have asked during negotiations, the first place to look is the statute. The statute says charitable... I'm sort of getting the feeling that there is never enough. You will always think of one more requirement. Whatever the taxpayer has done. Well, Justice Cook, there are two requirements. There's charitable ownership and charitable use. The burden is on the party taking the exemption. You at one time said there was no charitable use in this case. That has now been stipulated to. And now you've changed your mind on that and you've agreed there's charitable use. I'm not sure at the stage that that was stipulated to, but that's stipulated to at the basis of appeal. But certainly it's not uncommon for a party to change its position during the course of extensive administrative and judicial litigation. But I do want to get back to the point you raised, how many requirements are enough. There are two requirements. There's charitable ownership and there's charitable use. The burden is on them to show that they're entitled to the exemption. The burden is not on the department to show that they shouldn't receive the exemption. They simply didn't show enough that... The evidence in this case is undisputed. Right? Just like it was in Cole Hospital. Well, the evidence as to charitable use is undisputed. For example, the ALJ determined that OKO had not built a record on their attempts to obtain conventional financing and they had also failed to build a record on their... Joyce Keller testified the center was having financial difficulties. The region's bank had called in its loan and mortgage. The center was facing foreclosure and she had unsuccessfully met with other banks and went several places to try to get funding. That evidence is undisputed. The ALJ had found that that evidence wasn't supported by sufficient documentation. Yeah. But the evidence is the same as in Cole Hospital. It is undisputed. There is nothing to contradict that. In Cole Hospital there was substantial testimony and documentation of the hospital's attempt to obtain alternative financing. But the most significant difference here... You should have had five people testify to what she said instead of just one. Well, again, the burden is on them to show that they're entitled to the exemption. The Illinois Constitution establishes the rule that taxation is the rule and exemption is the exception. I see that I'm over time. Unless you have any other questions, I'd ask that you affirm the decision of the department. Thank you. We'll hear from Mr. Tye in rebuttal. Mr. Tye, before you get started, could you just tell me, are you aware of any case in Illinois where a for-profit entity was granted a tax exemption when they applied for it? I haven't looked for one, so I don't know. Well, OKO, you've admitted, is a for-profit entity. It is. If there was a case out there, wouldn't that have helped you? Well, Your Honor, we were looking at the cases that said it's the indicia of ownership that matter, not who the title owner is. And that's what we based this arrangement on. Well, I guess what I'm getting at is every single case that I could find, the exempt entity applied for the tax exemption, not a non-exempt entity. Is there any case that you're aware of where a non-exempt entity applied for and was granted a tax exemption? Your Honor, I am not. OK. All I can tell you is that, and what I'm hearing is that maybe it would have been better if we put it in the lease that Old King's Orchard had to pay the property taxes. The reason we didn't was because in Coles-Cumberland, that was specifically cited as one of the bad things that was done as to why they were not going to grant it. But Coles Hospital is otherwise. So why hang your head on one case over another? Well, we looked at, here's all the things we need to do and here's all the things we can't do, and so we put in the things we need to do. Doesn't payment of real estate taxes give indicia of ownership? The owner of property pays real estate taxes. It does. Go ahead, I didn't want to take my question. Who got the tax bill in this case? That would be OKO LLC. So the department sent the tax bill to OKO? Yes. So they're the ones getting billed, so they're the ones doing this. And again, I don't represent Old King's Orchard. I'm here for OKO. I would like to make one short reply about Joyce Keller. Joyce Keller is the vice president of Old King's Orchard Community Center. She's not my client. She came as a witness to the hearing, and she testified to what you read. You know, to the extent the ALJ faulted her for not having a bunch of loan documents with her, all I can say is that it's the rule that unrebutted testimony should be given its normal probative way unless it's inherently unbelievable. And absent the ALJ saying, I think Joyce Keller's a liar, and she didn't really do all those things, I think you just have to accept the unrebutted testimony of what she said.  Thank you. Thank you. I take the matter under advisement.